JASPER E. JONES, Judge.
The plaintiff, Harold L. Johnston, appeals a judgment which upheld the validity of a parish ordinance banning the sale of 3.2% beer in Ward 2 of Morehouse Parish. Local governing units may only pass such an ordinance pursuant to a local option election authorized by Title 26, Chapter 3 of the Revised Statutes. LSA-R.S. 26:595; Niette v. Natchitoches Parish Police Jury, 348 So.2d 162 (La.App. 3d Cir.1977); Johnston v. Morehouse Parish Police Jury, 424 So.2d 1053 (La.App. 2d Cir.1982). Therefore, the ultimate question for our determination is whether the Morehouse Parish *486 Police Jury was authorized by Chapter 3 to call the local option election giving rise to the ordinance in question. We find that Chapter 3 authorized the election and affirm the judgment.
Johnston is the owner and operator of the Community Grocery located in Ward 2 of Morehouse Parish. He holds a license issued by the Morehouse Parish Police Jury authorizing the sale of 3.2% beer at Community Grocery. On November 2, 1982 a local option election was held in which a majority of the voters in Ward 2 approved a proposition to prohibit the sale of 3.2% beer. Pursuant to the election results the police jury on Dec. 13, 1982 adopted Ordinance No. 1073, § 3-144 banning the sale of 3.2 beer in Ward 2.[1] Johnston subsequently filed suit to have the ordinance declared invalid and to enjoin its enforcement.
The identical parties and issues were previously before this court when Johnston attacked the validity of a similar ordinance banning the sale of 3.2% beer in Ward 2. That ordinance was adopted pursuant to a local option election held October 27, 1979. We held the ordinance was invalid because the election was unauthorized by law. Johnston v. Morehouse Parish Police Jury, supra. There have been a number of changes in Chapter 3 since the date of the 1979 election. A complete understanding of the issues here involved requires an in depth analysis of our prior opinion and the law in effect on October 27, 1979.
At that time Chapter 3, Part I, contained three provisions specifically applicable to local option elections to prohibit the sale of 3.2% beer. LSA-R.S. 26:581.1, 586.1 and 588.[2] The police jury urged that the source of its authority to conduct the 1979 election was 26:586.1 which provides in pertinent parts:
A. In addition to the procedure for calling local option elections by petition of twenty-five percent of the qualified electors residing in any ward or incorporated municipality an election may be ordered to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight, shall be conducted and licensed therein. Notwithstanding the provisions of R.S. 26:588, the ballot, in addition to the propositions contained in R.S. 26:587, shall contain the following propositions:[3]
“Shall the sale of beverages containing more than one-half of one percent alcohol by volume but not more than three *487 and two-tenths percent alcohol by weight be permitted in .

The police jury urged that 26:586.1 A constituted a substantive grant of authority to every local subdivision in the state to prohibit the sale of 3.2% beverages pursuant to local option elections. In direct conflict with this argument was the language of 26:588 which banned all parishes in the state from prohibiting the sale of 3.2% alcoholic beverages. This statute provided:
Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing, or selling of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight. Provided, however, this section shall not be construed as or have the effect of vitiating or affecting any ordinances adopted prior to 1948 by any political subdivision which prohibited the sale of beverages containing alcohol of more than one-half of one percent by volume; to preserve those ordinances of local subdivisions that prohibited the sale of beverages containing under 3.2 percent alcohol which were adopted prior to and were in effect in 1948; and any court decisions to the contrary are legislatively overruled.
The first sentence of 26:588 was incorporated into the Revised Statutes upon their passage in 1950.[4] 26:586.1 was added to Chapter 3 in 1974.[5] If Chapter 3 had only contained these two provisions dealing with the prohibition of 3.2% beer there may have been some support for the argument that 26:586.1, as the later passed statute, repealed 26:588 by implication. See LSA-C.C. 22 and 23. There was little support for this argument, however, because the act which added 26:581.1 to Chapter 3, as an exception to 26:588 was also passed in the 1974 session.[6] This statute reiterated the ban against prohibiting 3.2% beer sales contained in 26:588, however, it specified that 12 parishes were authorized to prohibit such sales pursuant to local option. 26:581.1 provided:
A. The provisions of this Chapter authorizing the prohibition of alcoholic beverages on a parish-wide basis and the prohibition of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight shall not apply and shall not be available for use in the parishes of or the wards or municipalities in any of the parishes of the state except Beauregard, Washington, Rapides, Natchitoches, Red River, Grant, LaSalle, East Carroll, West Carroll, Beinville, Jackson and Winn Parishes.
B. In the exercise of local option pursuant to the provisions of this Chapter in the wards and incorporated municipalities located in all parishes except Beauregard, Washington, Rapides, Natchitoch-es, Red River, Grant, LaSalle, East Carroll, West Carroll, Beinville, Jackson and Winn as provided in Subsection A of this Section, three propositions and no others shall appear on the petition provided for in R.S. 26:583 and on the ballot provided for in R.S. 26:587, which propositions shall be limited to propositions 1, 3 and 4 contained in R.S. 26:583 and R.S. 26:587, respectively.[7]
Because Chapter 3 contained all three provisions we made the following observations and findings at 424 So.2d 1058:
*488 Appellee’s contention, to reiterate, is that LSA-R.S. 26:586.1 authorizes local subdivisions in all parishes of the state— including Morehouse Parish — to ban the sale of 3.2% intoxicants pursuant to local option. In assessing appellee’s suggested construction of LSA-R.S. 26:586.1 we must refer to LSA-R.S. 26:581.1 and LSA-R.S. 26:588 which were contemporaneously effective with LSA-R.S. 26:586.-1. Having conducted this analysis, we are constrained by a single compelling and irresistable observation to reject ap-pellee’s contention and invalidate the instant prohibition. Under the construction of LSA-R.S. 26:586.1 urged by ap-pellee, LSA-R.S. 26:586.1 would implicitly repeal LSA-R.S. 26:588 and render LSA-R.S. 26:581.1 meaningless.
LSA-R.S. 26:586.1, as construed by ap-pellees, is directly contrary to LSA:R.S. 26:588. Appellees contend that LSA-R.S. 26:586.1 authorizes local options to prohibit the sale of 3.2% intoxicants in all parishes of the state; LSA-R.S. 26:588 expressly and absolutely bans such prohibitory local options in all parishes. LSA-R.S. 26:586.1, as construed by appellees, transforms LSA-R.S. 26:581.1 into inoperative surplusage. LSA-R.S. 26:581.1 enumerates with painstaking specificity the 12 parishes in which such elections can be conducted. It is manifest, of course, that this detailed enumeration in LSA-R.S. 26:581.1 is needless surplusage if the legislature intended that local options on 3.2% intoxicants could be held in all parishes.
In addition to rendering LSA-R.S. 26:588 and LSA-R.S. 26:581.1 inoperative individually, appellee’s suggested construction of LSA-R.S. 26:586.1 also disrupts the legislative scheme formed by the interaction of these two statutes. LSA-R.S. 26:588 provides the general rule that this type of local option in (sic) not allowed in any parish of the state, and LSA-R.S. 26:581.1 delineates the specific exceptions to this general ban, .permitting this type of option in 12 enumerated parishes. Thus, the legislative rule formed by the interaction of these statutes is that local options may prohibit the sale of 3.2% intoxicants solely in the 12 parishes enumerated in LSA-R.S. 26:581.1. LSA-R.S. 26:586.1 as construed by appellees, would of course thwart the legislative rule formed by the interaction of LSA-R.S. 26:588 and LSA-R.S. 26:581.1 by stating that local options may ban the sale of 3.2% intoxicants in all parishes.
In summary, we reject the contention that LSA-R.S. 26:586.1 was intended to be a grant of substantive authority to all parishes in the state to prohibit the sale of 3.2% intoxicants by local option. We find it more plausible that LSA-R.S. 26:586.1 was a procedural apparatus. It was intended not to implicitly repeal LSA-R.S. 26.588 and render LSA-R.S. 26:586.1 (sic) superfluous but to implement the substantive power to conduct prohibitory local options — in those parishes which already possessed that substantive power pursuant to LSA-R.S. 26:581.1. (emphasis contained in our opinion)
At the time of the 1982 election, November 2, 1982, 26:581.1 and 588 had been repealed.[8] Johnston, nevertheless, contends the election was unauthorized by law. His contention is based on our statement that, “We find it more plausible that LSA-R.S. 26:586.1 was a procedural apparatus.” (See our above quote). He argues that our statement conclusively established 26:586.1 as a procedural statute. As such it cannot now be construed as a substantive grant of power for any police jury in the state, to hold local option elections prohibiting the sale of 3.2% beer.
We find it unnecessary to address Johnston’s argument because we conclude the police jury had the substantive power to hold the election under LSA-R.S. 26:582, which provides:
*489 Upon petition of not less than twenty-five percent of the qualified electors residing in any parish, ward, or any incorporated municipality the governing authority shall order a referendum election to be held to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages, shall be conducted and licensed therein.
In the case of such an election held on other than a parishwide basis the election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward. In the case of an election called on a parishwide basis the result shall be binding on the entire parish. No such election shall be held for the same subdivision oftener than once in every two years, (emphasis supplied)
This statute allows every local governing unit in the state to hold local option elections prohibiting the sale of alcoholic beverages. For purposes of Chapter 3 the term alcoholic beverages is defined in LSA-R.S. 26:241. See LSA-R.S. 26:581. In pertinent parts 26:241 provides:
(1) “Alcoholic beverages” means any fluid or any solid capable of being converted into fluid, suitable for human consumption, and containing more than one-half of one per cent alcohol by volume, including malt, vinous, spiritous, alcoholic or intoxicating liquors, beer, porter, ale, stout fruit juices, cider, or wine.
(a) “Beverages of low alcoholic content” means alcoholic beverages containing not more than six per cent alcohol by volume.
(b) “Beverages of high alcoholic content” means alcoholic beverages eon-taming more than six per cent alcohol by volume, (emphasis supplied)
The general definition of “alcoholic beverages” in 26:241 covers 3.2% beer.[9] 26:582 merely uses the term alcoholic beverages. It does not specify alcohol content. Therefore, 26:582 gives local governing units the substantive authority to hold local option elections to prohibit the sale of all alcoholic beverages.
This grant of authority by 26:582 was in effect at the time of the 1979 election.[10] The reason we did not consider it in our prior Johnston opinion is that 26:588 provided an exception to the general rule by banning the prohibition of 3.2% beer. As was noted above 26:588 was repealed prior to the 1982 election. At the time that election was held there was nothing in Chapter 3 limiting the type of alcoholic beverages which could be prohibited by local option. We conclude that the November 2, 1982 election was authorized by law. Therefore, the Morehouse Parish ordinance banning the sale of 3.2% beer in Ward 2 of that parish is valid.
We note that during the course of our previous Johnston opinion we stated that 26:588 provides a general rule which bans all parishes from prohibiting the sale of 3.2% beer and that 26:581.1 provides an exception to that general rule. 424 So.2dat 1057. We would have been more accurate if we had recognized the existence of 26:582 and stated that it provides the general rule which allows all parishes, wards and municipalities to prohibit the sale of all alcoholic beverages and 26:588 provided an exception to the general rule by banning the prohibition of 3.2% beer sales and 26:581.1 provides an exception to the exception by listing 12 parishes which could prohibit such sales.
For the foregoing reasons, the judgment is AFFIRMED. All costs of this appeal are assessed to plaintiff.

. Ordinance No. 1073, § 3-144 bans the sale of all alcoholic beverages in Ward 2. Johnston only questions its validity insofar as it bans the sale of 3.2% beer.

. In addition, because of the provisions of 26:581.1, there were some special procedures for particular parishes contained in Chapter 3, Part II, to-wit: LSA-R.S. 26:601 et seq. These provisions are irrelevant to our discussion. They were repealed by Acts 1982, No. 471, § 1.

. The propositions contained in 26:587 are:
1. Shall the sale of beverages of YES [ ] low alcoholic content containing more than three and two-tenths percent alcohol by weight, and not more than six percent alcohol by volume, _ be permitted in. NO [_]
*2. Shall the sale of beverages YES [ ] containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight be permitted in. NO fj
3. Shall the sale of beverages of YES [ j high alcoholic content, containing more than six percent alcohol by volume for consumption on the premises be permitted in . NO [ j
4. Shall the sale of beverages of YES [ j high alcoholic content, containing more than six percent alcohol by volume by the package only and not for consumption on the premises be permitted in . NO [~]

Proposition 2 was eliminated by 26:581.1 B except when the election was being held in the 12 parishes specified.

. This provision was enacted by Acts 1948, No. 372, § 5.

. Acts 1974, No. 648, § 1.

. Acts 1974, No. 41, § 2.

. 26:581.1 had been declared unconstitutional before the date of the 1979 election. Nomey v. State, 315 So.2d 709 (La.1975). However, it remained on the books and we considered it important to our analysis of legislative intent because it was enacted at the same legislative session as 26:586.1. 424 So.2d at 1057 (see footnote 2).

. 26:588 was repealed by Acts 1980, No. 663, § 1. 26:581.1 was repealed by Acts 1982, No. 476, § 1 which became effective September 10, 1982.

. As used throughout Chapter 3, 3.2% beer is beer that is more than one-half of one percent (½ of 1%) alcohol by volume but not more than three and two-tenths percent alcohol (3.2%) by weight.

. In fact, the provision which became R.S. 26:582 was enacted by the same act which enacted the provision that became the first sentence of 26:588. Acts 1948, No. 372, § 1.